# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

KIP HAMILTON, individually;
DALLAS PAPPY, individually;
MAURIO POUGH, individually; and
LABORERS INTERNATIONAL
UNION OF NORTH AMERICA,
LOCAL 630, a public-employee labor
union,

      Plaintiffs,

v.

DONALD J. RUBOTTOM, in his official
capacity as Chair of the Florida Public
Employees Relations Commission;
CITY OF JACKSONVILLE, FLORIDA, a
Florida Municipality;
JEA, an independent agency of the City
of Jacksonville, Florida; and
DUVAL COUNTY SCHOOL BOARD,
the governing body of the Duval
County School District, an independent
agency of the City of Jacksonville,
Florida,

      Defendants.

Case No. 3:23-cv-827-_____

---

## COMPLAINT

**COME NOW** the Plaintiffs, KIP HAMILTON, individually; DALLAS PAPPY,

individually; MAURIO POUGH, individually; and LABORERS

INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 630 (hereinafter,

"Local 630"), a public-employee labor union, by and through the undersigned Counsel, and hereby sue Defendants DONALD J. RUBOTTOM, in his official capacity as Chair of the Florida Public Employees Relations Commission ("PERC"); the CITY OF JACKSONVILLE, FLORIDA ("City"), a Florida municipality; JEA, an independent agency of the City of Jacksonville, Florida; and DUVAL COUNTY SCHOOL BOARD ("School Board"), the governing body of the Duval County School District ("School District"), an independent agency of the City of Jacksonville, Florida, and state the following:

1.	In this case, Plaintiffs seek declaratory and injunctive relief related to various provisions of Florida Senate Bill 256 (hereinafter, "SB 256" or the "Act"). A true and accurate copy of SB 256 is attached hereto as **Exhibit A** and incorporated herein.

2.	This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

3.	Venue is proper in this Judicial District and Division, pursuant to 28 U.S.C. § 1391(b).

4.	Plaintiff KIP HAMILTON is an hourly-wage employee of the School District, is also both a member of Local 630 and the Chief Steward of the Duval County School Board bargaining units. Plaintiff KIP HAMILTON is also the secretary treasurer of Local 630, and is a resident and citizen of Jacksonville, Duval County, Florida.

5.      Plaintiff DALLAS PAPPY is an hourly-wage employee of JEA, is a member of Local 630, and is a resident and citizen of Callahan, Nassau County, Florida

6.      Plaintiff MARIO POUGH is an hourly-wage employee of the City, is also both a member of Local 630 and the Chief Steward of the City of Jacksonville, Florida bargaining unit. Plaintiff MARIO POUGH is also an officer and member of the executive board of Local 630. He is a resident and citizen of Jacksonville, Duval County, Florida.

7.      Local 630 is public employee labor union and advocacy organization that represents public employees throughout central and northeast Florida. Local 630's principal place of business is in Jacksonville, Duval County, Florida.

8.      Defendant DONALD J. RUBOTTOM is the chair and chief executive and administrative officer of PERC, which has the authority to implement and enforce the Public Employee Relations Act ("PERA") provisions that are the subject of this Complaint. He is sued in his official capacity.

9.      Defendant CITY OF JACKSONVILLE, FLORIDA is a Florida Municipality in northeast Florida, within this judicial District and Division. Local 630 represents certain hourly-wage employees of the City and, in connection therewith, has entered a written collective bargaining agreement ("CBA"), which remains in full force and effect. The CBA between the City and Local 630 is attached hereto as **Exhibit B** and incorporated herein.

10.     Defendant JEA is an independent government agency of the City. It is a regional utility service provider for residents in and nearby the City. Local 630 represents certain hourly-wage employees of JEA and, in connection therewith, has entered a written collective bargaining agreement, which remains in full force and effect. The CBA between JEA and Local 630 is attached hereto as **Exhibit C** and incorporated herein.

11.     Defendant DUVAL COUNTY SCHOOL BOARD is the governing body of the Duval County School District, an independent government agency of the City and provides K-12 public schooling, among other educational services, to residents of the City. Local 630 represents certain hourly-wage employees of the School District and, in connection therewith, has entered a written collective bargaining agreement, which remains in full force and effect. The two CBAs between the School District and Local 630 are attached hereto as **Exhibits D and E** and are incorporated herein.

12.     The Florida Constitution provides that "[t]he right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged," with the proviso that "[p]ublic employees shall not have the right to strike." FLA. CONST. art. I, § 6. In 1974, the Florida legislature enacted PERA "to provide statutory implementation of § 6, Art. I of the State Constitution" by "[g]ranting to public employees the right of organization and representation." FLA. STAT. § 447.201 (2022). Collective bargaining "protect[s] the public" and

"promote[s] harmonious and cooperative relationships between government and its employees." *Id.*

13. PERA grants public employees the right to form, join, participate in, and be represented by an employee organization of their own choosing, or to refrain from doing so; recognizes public employee and employer rights; provides a process by which a union chosen by a majority of the employees in an appropriate bargaining unit can be certified by PERC as the representative of all the employees in the unit for the purposes of collective bargaining; requires public employers and public-employee unions to bargain collectively concerning the wages, hours, and other terms and conditions of unit employees' employment; enumerates prohibited unfair labor practices by public employee unions and employers; and requires annual registration requirements to be filed with PERC by certified unions. See generally Fla. Stat. §§ 447.301, 447.209, 447.305, 447.307, and 447.309 (2022).

14. SB 256 amends the PERA in three ways that are relevant to the instant case:

    a. Section 1 of the Act forces some (hereinafter, the "disfavored unions") but not all public employee labor unions to include in all of their membership applications a government-drafted, 91-word "right-to-work" affirmation in 14-point type, along with an accounting of the compensation of the union's five highest-paid officers and employees,

in violation of the disfavored unions' and union members' First Amendment rights to freedom of speech and association and their Fourteenth Amendment rights to equal protection of the laws;

b. Section 3 of the Act prohibits disfavored unions from collecting voluntary membership dues by means of employee-authorized payroll deductions from union members salaries, thereby impermissibly impairing certain disfavored unions' contractual rights in violation of Article I, Section 10 of the United States Constitution, and impermissibly imposing viewpoint-based restrictions on their collection of voluntary membership dues, in violation of their First Amendment rights to freedom of speech and of their Fourteenth Amendment rights to equal protection of the laws; and

c. Section 4 of the Act subjects disfavored unions to immediate decertification—thereby impermissibly impairing the contractual rights of disfavored unions in violation of Article I, Section 10 of the United States Constitution—if such a union fails to comply with any of the following obligations: annually disclosing audited financial statements; annually disclosing accountant-certified figures showing the number of bargaining unit employees who are and are not dues-paying union members; and undergoing an election to determine

whether it can continue to serve in its role as collective bargaining representative if its disclosures show that fewer than 60% of the employees it represents are dues-paying members of the union.

15. Section 1 of SB 256 impermissibly and unconstitutionally burdens Plaintiffs' free speech rights by compelling the union to create, and the current or prospective member sign and date, a membership authorization form that includes the following 91-word state-mandated message "in 14-point type":

> The State of Florida is a right-to-work state. Membership or non membership in a labor union is not required as a condition of employment, and union membership and payment of union dues and assessments are voluntary. Each person has the right to join and pay dues to a labor union or to refrain from joining and paying dues to a labor union. No employee may be discriminated against in any manner for joining and financially supporting a labor union or for refusing to join or financially support a labor union.

16. This state-mandated message, which must be disseminated by the union and acknowledged in writing by union members, in what amounts to a ratification or endorsement of such message, is unnecessary and inaccurate. It is unnecessary because there is no legitimate justification for its apparent assumption that public employees are not informed of their right not to join a union, much less that the employees interested in joining a disfavored union are less informed of that right than are those interested in joining a favored union.

17. The message is inaccurate because "certified employee organizations shall not be required to process grievances for employees who are not members of

the organization," FLA. STAT. § 447.401, and such organizations may also decline to extend to non-members certain rights and benefits, including the right to vote in union elections and eligibility to participate in certain members-only programs sponsored by the union, such as group insurance benefits. non-members certain rights and benefits, including the right to vote in union elections and eligibility to participate in certain members-only programs sponsored by the union, such as group insurance benefits.

18.     Second, Section 1 of the Act also requires disfavored unions to include on the membership form "the name[s] and total amount of salary, allowances, and other direct or indirect disbursements, including reimbursements, paid to each of the [unions'] five highest compensated officers and employees." There is no justification for requiring this information on membership applications, nor for requiring it to be provided by disfavored unions but not by favored unions.

19.     Not only does Section 1 of the Act compel disfavored unions to communicate the above-described unjustifiable government-mandated messages to prospective members, it also requires that the entire form and content of disfavored unions' membership applications are to be prescribed by PERC. There is no such requirement for favored unions.

20.     Section 1 compels disfavored unions to communicate (and disfavored union members to acknowledge, if not ratify and endorse) a message with which

they may disagree. But Section 1 of SB 256 expressly exempts favored unions from Section 1's compelled speech requirements.

21.     With respect to Section 3 of the Act, Plaintiffs are in a unique position, in that Section 3 of the Act would apply to the Plaintiffs but for the fact that all members of Local 630 are <u>hourly-wage</u> employees. None of Local 630 members is salaried.

22.     Because Section 3 of the Act prohibits public employers from deducting disfavored union dues from members' <u>salaries</u> only, Section 3 of the Act should not be applied to Plaintiffs. Nevertheless, Defendants City, JEA, and School Board have all expressed their intention of applying Section 3 of the Act to the Plaintiffs and ceasing payroll deductions of union membership dues from the individual Plaintiffs' wages.

23.     Therefore, Plaintiffs seek a declaratory judgment that Section 3's payroll deduction ban <u>does not apply</u> to Plaintiffs insofar as, and only to the extent that, Local 630 is comprised of union members who are exclusively hourly-wage employees, and none of whom is a salaried employee.

24.     In the alternative, and to the extent that Section 3's payroll deduction ban <u>does apply</u> to Plaintiffs, then, Section 3 discriminatorily restricts disfavored unions based solely on their viewpoints.

25. Section 3 also independently violates the Contracts Clause by substantially impairing existing disfavored union contracts regarding payroll deduction.

26. Section 4 of SB 256 amends PERA's provisions relating to public employee unions' obligations to file annual registration statements with PERC, FLA. STAT. § 447.305(2), to require every disfavored union, as of October 1, 2023, to provide, in its annual registration statements, audited financial statements as well as data, verified by an independent certified public accountant, showing the number of employees in the bargaining unit and the number of unit employees who are and are not paying dues.

27. Section 4 provides that if such a report shows that fewer than 60% of the unit employees are dues-paying members of the disfavored union, that union must petition PERC for recertification in order to continue in its role as collective bargaining representative. A disfavored union's failure to comply with these provision subjects it to immediate decertification. Section 4 expressly exempts certain favored unions from these onerous requirements and sanctions—including the 60% threshold—while imposing them on the disfavored unions.

28. Unless enjoined by this Court, the challenged provisions of the Act will have significant adverse effects on Plaintiffs and will cause them to suffer irreparable injuries, to wit:

a. The inclusion of a state-mandated 91-word "right-to-work" message, as well as an accounting of all disbursements to the five most highly compensated union officers and employees on the disfavored unions' membership applications will burden the speech and association rights of the Plaintiffs and those who choose to become members of Plaintiffs.

b. Local 630, like other private associations, as well as the individual Plaintiffs, have the First Amendment right to recruit members and become members using their own words and their own membership application forms. And the Plaintiffs and their members have the right to refrain from endorsing an ideological slogan like the phrase "right-to-work" and the right not to communicate government-dictated inaccurate information in their private association membership forms, as communicating inaccurate information will force the Plaintiffs to engage in speech that attempts to dispel the inaccuracies. In the face of those well-established rights, SB 256 will force the Plaintiffs to communicate, and those choosing to become members to affirm, a government prescribed form containing a prominent, inaccurate, government-drafted ideological and inflammatory statement with which the Plaintiffs do not agree.

c. Local 630, like other private associations, are free to extend only to members certain benefits including the right to vote and participate in union affairs, yet the government-mandated message that SB 256 requires disfavored unions to disseminate inaccurately informs prospective and new members that the Local 630 in fact cannot discriminate "in any manner" against non-members.

d. In addition, the government-mandated message compels the disfavored unions to disseminate the ideological statement that Florida is a "right to work" state to describe the state of the law in Florida. The phrase "right-to-work" is not a statement of fact. Rather, it is an ideological slogan of union opponents, which many who support unions find objectionable, as they understand the phrase to be a misleading euphemism that signals a desire to avoid paying one's fair share for the economic benefits produced by collective negotiation. For the legislature to force the inclusion of the phrase onto a form designed to be endorsed only by those who, by definition, wish to become union members therefore goes well beyond the normal evils of compelled speech. It adds an element of a government-sponsored taunt directed at those who hold views that are disfavored by the Government. And it conditions a core exercise of the right to freedom of association—the right to join a voluntary

advocacy organization—on the signing of an attestation that is offensive to the organization iteself, including Local 630, as well as its members, including the individual Plaintiffs.

e. The requirement that disfavored unions—and only disfavored unions—must also include in their membership forms an accounting of all disbursements (including reimbursed business expenses) to the unions' five most highly compensated officers and employees further burdens disfavored unions' communications to prospective members with unnecessary and unjustifiable government-mandated speech that dilutes and distracts from the unions' own message. Favored unions do not bear this burden.

f. The discriminatory ban against disfavored unions' collection of voluntary membership dues by means of payroll deduction will cause Local 630 to incur significant costs while diminishing its membership dues revenue. Voluntary membership dues are the primary source of revenue on which the Local 630 supports its operations. Because of the transaction costs involved in the making and collecting of large numbers of small monthly dues payments, payroll deduction is the most effective and efficient method for public employees to pay, and for public employee unions to collect, membership dues—at a negligible cost to public employers, which, under pre-SB 256 PERA,

any public employer could recoup in bargaining. Consequently, the ban against disfavored unions' collection of membership dues via employee-authorized payroll deductions will cause the Local 630 to incur significant, non-recoverable costs to implement and maintain alternative methods for collecting dues, such as by recurring electronic bank transfers, which require the payment of fees, and which are not comparable to payroll deduction in efficiency and effectiveness. In addition, disfavored unions will lose dues revenue because many union members are unwilling to use bank-debit transactions to pay their dues owing to such concerns as the possibility of incurring charges for insufficient bank account funds, and sharing their private banking information, or because the members are unbanked and cannot pay automated dues absent payroll deduction.

29. There is no adequate remedy at law for the impending loss of payroll deduction. For example, the public employers with whom the Local 630 has contractual rights could raise SB 256's prohibition against payroll deduction for disfavored unions as a defense if the Plaintiffs brought damages claims for breach a contract, and Florida could raise Eleventh Amendment immunity as a defense.

30.     SB 256's classifications between disfavored unions and favored unions lack any rational, much less substantial, or compelling, connection to a legitimate state purpose.

31.     The discriminatory requirement that disfavored unions must annually disclose audited financial statements and certified-accountant-verified data showing the percentage of bargaining unit members who are dues-paying union members will cause disfavored unions to incur substantial administrative burdens and financial costs of compliance. The further requirement that a disfavored union must undergo a decertification election if its annual registration statement shows that fewer than 60% of the unit employees are dues paying members will require disfavored unions to incur further costs to conduct election campaigns and to pay half of the costs of decertification elections. The consequence of a union's failure to satisfy Section 4's new requirements is decertification of the union. And decertification of the union means that the CBA itself becomes unenforceable before the expiration of its agreed-upon term, causing the union and the employee beneficiaries of the contract to lose the benefit of their bargain. Because Local 630 is party to CBAs with the Defendant public employers that will be in force when Section 4's requirements take effect, those new requirements impose new and costly conditions precedent on Local 630's ability to preserve the CBAs for their stated, agreed-upon duration.

32.     By adding new and costly conditions precedent to the enforceability of existing CBAs during their unexpired terms, Section 4's discriminatory disclosure and decertification rules substantially impair those CBAs, and that impairment is not reasonable and necessary to serve any important or legitimate public purpose.

33.     Section 4's onerous new requirement that disfavored unions undergo decertification elections if their annual registration statements show that fewer than 60% of their bargaining units' employees are dues-paying members is irrational. To begin with, Section 4 requires even a unit with a clear majority of actual dues paying members to undergo a decertification election. But the irrationality is deeper than that, for the fact is that the percentage of employees in a unit who are dues-paying union members is not a valid basis for judging the level of union support in a unit. Indeed, the percentage of unit members who are union members, if anything, undercounts support for the union as a bargaining agent. That is because employees in a represented unit who are not union members derive the same benefits from the union's collective bargaining and other advocacy as dues paying members do. This makes it easy for many employees to choose not to be members even though they wish to be represented by the union—*e.g.*, because they prefer not to pay union dues at all, because they have temporarily stopped paying dues to tend to an immediate financial emergency, or because they disagree with certain activities of the union but support its efforts to

raise wages and benefits. Yet Section 4 irrationally requires disfavored unions to undergo decertification elections even in many instances where membership figures affirmatively suggest increasing majority union support, as when membership has increased from 51% to 59%. Meanwhile, Government-favored unions face no such supermajority requirement.

34.    Section 4's separate discriminatory requirement that disfavored unions must disclose audited financial statements in their annual registration statements, or else face the sanction of immediate decertification, likewise adds cumbersome and costly new conditions on the continuing enforceability of existing CBAs that are not reasonably related to any important or even legitimate government interest. The administrative burdens and financial costs imposed by this new requirement will be particularly damaging to small local unions in rural areas that have limited revenues.

35.    Plaintiffs have engaged the undersigned Counsel to represent them and are obligated to pay attorney fees and costs related to this case. Plaintiffs therefore request an award of attorney fees and costs in their favor and against the Defendants, pursuant to 42 U.S.C. § 1988.

## COUNT I – VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS
### (Section 1 of SB 256)
### (Defendant DONALD J. RUBOTTOM, in his official capacity, only)

36.    Plaintiffs reallege paragraphs 1 through 35.

37.     The First Amendment to the United States Constitution provides that the government "shall make no law… abridging the freedom of speech, … or the right of the people peaceably to assemble." U.S. Const. amend. I. The First Amendment is made applicable to the State of Florida by the Due Process Clause of the Fourteenth Amendment.

38.     This requirement unconstitutionally compels private organizations and individuals to disseminate or affirm certain views favored by the government. In so doing, the requirement impermissibly mandates the content and viewpoint of private speech.

39.     Section 1 of SB 256, by compelling disfavored unions to report the disbursements to the five highest-paid officers and employees of each union in the membership authorization forms that the unions present to prospective members, and compelling those public employees who desire to become members of disfavored unions to sign authorization forms that include such accounting, violates the rights to freedom of speech and freedom of association protected by the First Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment to the U.S. Constitution.

40.     This compelled speech dilutes the speech disfavored unions choose to include in their membership authorization forms. By compelling unions to include this speech, Section 1 of SB 256 impermissibly mandates the content of such speech.

41. Section 1 of SB 256, by commandeering disfavored unions' membership applications with a mandate that PERC prescribe the entire form and content of those membership applications, violates the rights to freedom of speech and freedom of association protected by the First Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment to the U.S. Constitution.

42. Section 1 of SB 256, by compelling disfavored unions to convey a prominent, government-drafted, 91-word "right-to-work" affirmation in the membership authorization forms that they present to prospective members, and compelling those public employees who desire to become members of disfavored unions to sign that affirmation, violates the rights to freedom of speech and freedom of association protected by the First Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment to the U.S. Constitution.

43. Additionally, the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

44. Section 1 of SB 256, by compelling disfavored unions to convey a prominent, government-drafted, 91-word "right-to-work" affirmation in the membership authorization forms that they present to prospective members, and compelling those public employees who desire to become members of disfavored

unions to sign that affirmation, while imposing no such requirements on favored unions and those public employees who wish to become members of them, violates the guarantee of equal protection of the laws provided by the Fourteenth Amendment of the United States Constitution.

45.     Section 1 of SB 256, by compelling disfavored unions to report the disbursements to the five highest-paid officers and employees of each union in the membership authorization forms that the unions present to prospective members, and compelling those public employees who desire to become members of disfavored unions to sign authorization forms that include such accounting, while imposing no such requirements on favored unions and those public employees who wish to become members of them, violates the guarantee of equal protection of the laws provided by the Fourteenth Amendment of the United States Constitution.

46.     Section 1 of SB 256, by commandeering disfavored unions' membership applications with a mandate that PERC prescribe the entire form and content of those membership applications, while leaving favored unions free to use their own words in their membership applications, violates the guarantee of equal protection of the laws provided by the Fourteenth Amendment of the United States Constitution.

47. These provisions infringe on disfavored unions' fundamental First Amendment rights to freedom of speech and freedom of association while imposing no comparable burden on favored unions.

48. These provisions' differentiation between favored and disfavored unions does not advance any substantial or compelling government interest and is not narrowly tailored or reasonably related to any such interest.

49. These requirements fail to advance any substantial or compelling government interest, are not narrowly tailored, or reasonably related to any such interest, and substantially burden Plaintiffs' First Amendment rights.

50. Plaintiffs will suffer certainly impending, continuing, irreparable harm as a result of these constitutional violations.

**WHEREFORE**, Plaintiffs request the entry of a final judgment in their favor and against Defendant RUBOTTON, in his official capacity:

a. declaring that Section 1 of SB 256 violates the Plaintiffs' rights to freedom of speech and association under the First Amendment and to equal protection of the laws under the Fourteenth Amendment of the United States Constitution;

b. preliminarily and permanently enjoining Defendant RUBOTTOM, in his official capacity, as well as all of his successors and those acting in concert with him/them, from enforcing or implementing the provisions of SB 256 described above;

c. awarding attorney fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988; and

d. providing such other and further relief as this Honorable Court deems just and proper.

<u>**COUNT II – DECLARATORY JUDGMENT**</u>
**(Section 3 of SB 256)**
**(All Defendants)**
**(Alternative to Count III)**

51.     Plaintiffs reallege paragraphs 1 through 35.

52.     This is an actual case or controversy and declaratory relief is appropriate in this case, because without the declaratory relief sought in this count, Plaintiffs would suffer a deprivation of federal constitutional rights, as alleged in more detail in Count III, which seeks relief that is alternative to the relief sought in this count.

53.     Plaintiff Local 630 has valid, binding, active contracts with the City, JEA, and School Board, which Local 630 bargained for and secured the employers' agreements to collect voluntary membership dues via payroll deduction.

54.     Section 3 of SB 256 provides in relevant part that, "an employee organization that has been certified as a bargaining agent may not have its dues and uniform assessments deducted and collected by the employer **<u>from the salaries</u>** of those employees in the unit." (emphasis added).

55.     The Florida Legislature knows how to distinguish between "salaries" and "wages", because elsewhere in Florida Statutes, the Legislature has made such a distinction. *See, e.g.*, FLA. STAT. § 447.203(15)(defining "membership dues deduction" in relevant part as "the practice of a public employer of deducting dues and uniform assessments from **the salary or wages** of a public employee." (emphasis added).

56.     Despite the fact that all of Local 630's members, including the individual Plaintiffs, are hourly-wage employees and not salaried employees of their respective employers, The City, JEA, and School Board, intend to apply Section 3's payroll deduction ban to Local 630 and its members.

**WHEREFORE**, Plaintiffs respectfully request the entry of a final judgment:

a.  declaring that the payroll deduction ban, provided by Section 3 of SB 256, is inapplicable to Plaintiffs, insofar as all of Local 630's members are hourly-wage members and none is a salaried employee

b.  awarding costs of this action; and

c.  providing such other and further relief as this Honorable Court deems just and proper.

**COUNT III – VIOLATION OF ARTICLE I, SECTION 10, U.S. CONST.; AND FIRST AND FOURTEENTH AMENDMENTS**
**(Section 3 of SB 256)**
**(All Defendants)**
**(Alternative to Count II)**

57.     Plaintiffs reallege paragraphs 1 through 35.

58. Article I, Section 10 of the United States Constitution provides that "[n]o State shall … pass any … Law impairing the Obligation of Contracts."

59. Plaintiff Local 630 has valid, binding, active contracts with the City, JEA, and School Board, which Local 630 bargained for and secured the employers' agreements to collect voluntary membership dues via payroll deduction.

60. By prohibiting disfavored unions from collecting voluntary membership dues via payroll deduction, Section 3 of SB 256 substantially impairs the contractual rights of Local 630 in violation of Article I, Section 10, Clause 1 of the United States Constitution. The provision changes permissions and obligations of disfavored unions and their members on which those unions and individuals have relied.

61. The imposed impairment is not reasonable and necessary to advancing an important public purpose.

62. Additionally, by prohibiting disfavored unions from funding their advocacy by means of payroll deductions administered by public employers, while granting favored unions the right to fund their advocacy by means of such deductions, Section 3 of SB 256's payroll deduction ban distinguishes among different speakers with different viewpoints, facilitating speech by some but not other speakers, as a means of curtailing, or diluting the relative reach of the advocacy of the viewpoints of the disfavored unions, and thereby violates the right to freedom of speech protected by the First Amendment of the United States

Constitution, as incorporated by the Fourteenth Amendment to the U.S. Constitution.

63. These requirements fail to advance any substantial or compelling government interest, are not narrowly tailored or reasonably related to any such interest, and substantially burden the Plaintiffs' First Amendment rights.

64. Additionally, by prohibiting disfavored unions from collecting voluntary membership dues via payroll deduction, while allowing favored unions to continue collecting membership dues via payroll deduction, Section 3 of SB 256 violates the guarantee of equal protection of the laws provided by the Fourteenth Amendment of the United States Constitution.

65. The provision infringes on disfavored unions' First Amendment and contractual rights while imposing no comparable burden on favored unions.

66. The provision's differentiation between favored and disfavored unions does not advance any substantial or compelling government interest and is not narrowly tailored or reasonably related to any such interest.

67. Plaintiffs will suffer certainly impending, continuing, irreparable harm as a result of this constitutional violation.

**WHEREFORE**, Plaintiffs request the entry of a final judgment in their favor and against all Defendants:

    a. declaring that Section 3 impairs the contractual rights of Local 630 in violation of Article I, Section 10, Clause 1 of the United States

Constitution and also violates the Plaintiffs' rights to freedom of speech under the First Amendment and to equal protection of the laws under the Fourteenth Amendment of the United States Constitution;

b.  preliminarily and permanently enjoining all Defendants, as well as all their successors and those acting in concert with them, from enforcing or implementing the provisions of SB 256 described above;

c.  awarding attorney fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988; and

d.  providing such other and further relief as this Honorable Court deems just and proper.

## COUNT IV – VIOLATION OF ART. I, SECTION 10, U.S. CONST.
### (Section 4 of SB 256)
### (Defendant DONALD J. RUBOTTOM, in his official capacity, only)

68.  Plaintiffs reallege paragraphs 1-35.

69.  Plaintiff Local 630 has valid, binding, active contracts with the City, JEA, and School Board, containing numerous provisions that establish the wages, benefits, and other valuable terms and conditions of employment for the employees represented by it.

70.  Section 4 subjects disfavored unions, including Local 630, to immediate decertification if Local 630 fails to comply with any of the following new obligations: annually disclosing audited financial statements; annually

disclosing accountant-certified figures showing the number of bargaining unit employees who are and are not dues-paying union members; and undergoing an election to determine whether the union can continue to serve in its role as collective bargaining representative if its disclosures show that fewer than 60% of the employees it represents are dues-paying members of the union. Immediate decertification means that the CBAs setting out the rights of the bargaining unit employees become unenforceable.

71.     By conditioning the continuing enforceability of disfavored unions' CBAs on compliance with new and onerous conditions, Section 4 of SB 256 substantially impairs the contractual rights of Local 630 in violation of Article I, Section 10, Clause 1 of the United States Constitution. The provision changes permissions and obligations of disfavored unions and their members on which those unions and individuals have relied.

72.     The imposed impairment is not reasonable and necessary to advancing an important public purpose.

73.     Plaintiffs will suffer certainly impending, continuing, irreparable harm as a result of this constitutional violation as Section 4's October 1, 2023, effective date approaches.

**WHEREFORE**, Plaintiffs request the entry of a final judgment in their favor and against all Defendants:

a. declaring that Section 4 impairs the contractual rights of the Plaintiff Local 630, in violation of Article I, Section 10, Clause 1 of the United States Constitution;

b. preliminarily and permanently enjoining all Defendants, as well as all their successors and those acting in concert with them, from enforcing or implementing the provisions of SB 256 described above;

c. awarding attorney fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988; and

d. providing such other and further relief as this Honorable Court deems just and proper.

Dated July 14, 2023.                    **THE BONDERUD LAW FIRM, P.A.**

<u>/s/ *Andrew Bonderud*</u>
Andrew M. Bonderud, Esq.
Florida Bar No. 102178
2130 Riverside Ave.
Jacksonville, FL 32204
904-438-8082 (telephone)
904-800-1482 (facsimile)
Andrew@Jax.Lawyer
John@Jax.Lawyer
Kinnette@Jax.Lawyer
BonderudLaw@gmail.com
*Counsel for Plaintiff*